IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| CONSTANCE N. McKEEVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:07-00429 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Document No. 14.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 19.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 6.)

The Plaintiff, Constance N. McKeever (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on July 29, 2005 (protective filing date), alleging disability as of December 30, 2004, due to fibromyalgia, high blood pressure, and carpal tunnel syndrome of the right hand.[1] (Tr. at 12, 60, 61-63, 64-65, 100.) The claim was denied initially and upon reconsideration. (Tr. at 25-27, 33-36.) On April 7, 2006, Claimant requested a hearing before an

---

[1] In her request for reconsideration, Claimant alleged disability due to the additional impairments of anxiety attacks and depression due to pain. (Tr. at 33, 130.)

Administrative Law Judge (ALJ). (Tr. at 36.) The hearing was held on January 23, 2007, before the Honorable Theodore Burock. (Tr. at 260-95.) By decision dated April 25, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-20.) The ALJ's decision became the final decision of the Commissioner on May 18, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On July 11, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

> which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from obesity, hypertension, headaches, neck impairment, carpal tunnel syndrome, and fibromyalgia, which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, as follows:

> [C]laimant has the residual functional capacity to perform work at the light exertional level, which involves lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She can occasionally climb ramps or stairs. She can never

>climb ropes, ladders, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She should avoid concentrated exposure to extreme cold temperatures, vibrations, and hazards such as heights and machinery.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as an intake administrator and a community organization worker. (Tr. at 19, Finding No. 6.) On this basis, benefits were denied. (Tr. at 19-20, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 18, 1951, and was 55 years old at the time of the administrative hearing. (Tr. at 61, 263-64.) Claimant had a high school education and completed two years of

college. (Tr. at 105, 263.) In the past, she worked as an intake administrator and a community organization worker. (Tr. at 101-02, 121-24, 288-91.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's pain and credibility and (2) failing to consider the combination of Claimant's impairments. (Document No. 14 at 8-11.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 19 at 7-11.)

1. Pain and Credibility.

Claimant first alleges that the ALJ improperly evaluated her subjective complaints of pain and other symptoms and erred in finding Claimant not entirely credible. (Document No. 19 at 8-10.) Specifically, Claimant asserts that the medical evidence corroborates "her non-exertional disabilities" and the fact that she is disabled. (Id. at 9-10.) Claimant notes that the record contains references to her ability to perform "light housework, cooked light meals, took care of her husband and dog. She also indicated throughout the record that when she was [not] able to do these things her husband did them." (Id. at 9.) The Commissioner asserts that the ALJ's analysis was in accordance with the applicable law and Regulations. (Document No. 19 at 9-10.) Citing case law from other jurisdictions, the Commissioner asserts that Claimant's diagnosis of fibromyalgia did not mean automatically that her allegations of pain had to be accepted. (Id. at 10.) The Commissioner

7

points out that the ALJ devoted more than two pages of discussion to his pain and credibility assessment, which demonstrates that he considered all of Claimant's complaints and that his finding was based on substantial evidence. (Id.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

>	(i) Your daily activities;
>
>	(ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
>	(iii) Precipitating and aggravating factors;
>
>	(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
>	(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
>	(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
>	(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

>	First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>	Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to

assessing pain, symptoms and credibility. (Tr. at 16-17.) Claimant does not challenge the ALJ's threshold finding. Rather, Claimant contends that the ALJ erred at the second step of the analysis in assessing Claimant's credibility and pain. At the second step of the analysis, the ALJ concluded that Claimant's "allegation that she is not capable of all work activity is inconsistent with the record as a whole." (Tr. at 17.)

The Court finds that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4) and 416.929(c)(4), in evaluating Claimant's pain and credibility, despite Claimant's assertion to the contrary. The ALJ summarized Claimant's testimony in his decision, and acknowledged Claimant's reports of continuous pain in her legs, back, shoulders, and neck. (Tr. at 17, 268-74, 283.) He noted Claimant's testimony that she suffered headaches twice a week for which she took over-the-counter pain medication. (Tr. at 17, 271-72.) As a result of Claimant's impairments, she testified that she could lift five pounds, walk two blocks, sit for thirty minutes, and stand for forty to forty-five minutes. (Tr. at 17, 278-80.) The ALJ noted that Claimant testified that sitting was not comfortable. (Tr. at 17.) The ALJ thus noted the nature and location of Claimant's pain, and further noted the testimony that she had difficulty opening jars, wore a wrist brace, and took medications which eased her pain for a short period of time. (Tr. at 17, 265, 270, 274.) The ALJ also noted Claimant's testimony that she experienced side effects from her medications to include drowsiness, sleepiness, and stomach problems, but noted that "the record did not establish any side effects that would interfere with her ability to return to her past relevant work." (Tr. at 17, 274-75.)

The ALJ also acknowledged Claimant's reported activities of daily living. (Tr. at 17.) The ALJ noted that on September 6, 2005, Claimant reported on a form Function Report - Adult that she made the beds, dusted furniture, prepared meals, read, and did the laundry and light housework. (Tr.

at 17, 112-20.) She further reported that she drove a vehicle, shopped for food and clothing, and occasionally attended church activities. (Id.) However, Claimant also reported that she could not do yard work, vacuuming, or mopping, and had difficulty opening jars and packages. (Id.) She further reported that she spent some time, but not a lot on the computer, paid bills, and handled a checking and savings account. (Tr. at 17, 115-16.) At the administrative hearing, Claimant testified that she washed dishes, emptied small bags of trash, sat down to dust off tables, could not bend to make beds, read a lot, and worked puzzles. (Tr. at 17, 280-81.)

Based on the foregoing, it is clear that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4) and 416.929(c)(4), in finding Claimant not entirely credible. The ALJ determined that Claimant's "allegation that she is not capable of all work activity is inconsistent with the record as a whole." (Tr. at 17.) The ALJ therefore, proceeded to consider the medical evidence of record, noting that such evidence did not support Claimant's allegations. (Tr. at 17-19.) Regarding Claimant's activities of daily living, the ALJ concluded that Claimant greatly minimized her activities and that such a decrease in activities was not supported by the medical evidence. (Tr. at 18.) The ALJ noted that Claimant's physical examinations essentially were normal; that her blood pressure was controlled when she was compliant with prescribed medications; that she continued to work after being diagnosed with carpal tunnel syndrome; and that she had good grip, was able to perform fine movements without difficulty, and was able to sign her name without any problems. (Tr. at 18, 178-212, 214, 255-59.) Though Claimant testified that she experienced headaches that caused her to vomit and have constant tearing of the eyes, the ALJ noted that Claimant did not report these conditions to the consultative examiner. (Tr. at 18, 271, 282.) The ALJ further acknowledged Claimant's obesity but determined that the medical evidence reflected no significant adverse affect

on her functional abilities or abnormal movement patterns. (Tr. at 18, 218.) The ALJ also noted inconsistencies in Claimant's reported reasons for no longer working and that the medical record, despite Claimant's allegations, revealed no evidence of intensification of treatment. (Tr. at 18.) Finally, the ALJ acknowledged the opinion evidence of record and concurred with the opinions of the state agency medical consultants. (Tr. at 19, 213-17, 218-26, 227-34.)

Accordingly, the Court finds that the ALJ properly considered Claimant's subjective allegations and that his pain and credibility assessment is supported by substantial evidence.

2. ALJ's Consideration of Impairments in Combination.

Claimant further alleges that the ALJ did not consider the combined effects of her impairments. (Document No. 14 at 11-12.) The Commissioner asserts that this argument is without merit. (Document No. 19 at 10-11.)

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523; 416.923 (2006). When there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d

148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of her impairments in combination and "fractionalized" the impairments. (Document No. 14 at 10-11.) The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 12-13, 16.) The ALJ then discussed Claimant's impairments, finding that her obesity, hypertension, headaches, neck impairment, carpal tunnel syndrome, and fibromyalgia, were severe impairments. (Tr. at 14.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment of combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. at 16.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting her to light work, with postural and environmental limitations. (Tr. at 16.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 12, 16.) In his pain and credibility assessment, the ALJ discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling.

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's argument is therefore without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order

entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 14.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 19.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 18, 2008.

R. Clarke VanDervort
United States Magistrate Judge